RICHARD CHRISTIE, Appellant, *v.* B. F. VINEBURG, INC., and FRED SAUER, Respondents, Impleaded with EAST 69TH STREET OPERATING CORP. and Others, Defendants.

First Department, April 19, 1940.

*Abraham Green* of counsel [*Julius Kahn*, attorney], for the appellant.

*Arthur K. Wing* of counsel [*James G. Purdy* with him on the brief; *John H. Brogan*, attorney], for the respondents.

COHN, J. The accident out of which this action arose occurred in the borough of Manhattan, New York city, at eleven-forty P. M. on December 2, 1936. A small Ford truck allegedly belonging to defendant B. F. Vineburg, Inc. (hereafter referred to as "Vineburg"), going west out of East Seventy-ninth street and turning north on First avenue, struck and damaged a vehicle in which plaintiff was riding, and seriously injured him. At the time the signal lights were green for north and south traffic. When the cars collided, plaintiff observed the name of the corporate defendant on the left door of the Ford truck. Its operator drove from the scene without being identified. Some thirty minutes later, a Ford truck belonging to Vineburg, with both left fenders crushed, was found abandoned at Eighty-second street east of First avenue. The radiator was still warm, and the keys were in the ignition switch.

A police detective, called to investigate, learned that Anton Dolejs and Fred Sauer were employees of Vineburg. He located Dolejs at his home about a half mile away, on East Sixty-ninth street, at two-thirty o'clock in the morning, and at about three the

same morning he interviewed the defendant Sauer, who resided on the same street. Sauer informed the officer that: " The last I know of the car I had it around 4:30 and put it down in the garage down in the corner."

Wesely, an employee of the East 69th Street Garage, where the car was stored when not in use, testified that just before four P. M. on December second the Vineburg truck came to the garage driven by defendant Sauer, who purchased five gallons of gas, and when asked, " Are you all through?" Sauer replied, " No. I've got to go up on another job and finish it up." Harris, the operator of the garage, stated that he saw the Vineburg truck at the garage when Sauer was buying gas; that he (Harris) worked until eleven o'clock that night and had made numerous visits to the upper floor of the garage where the Vineburg car was always stored, but found the space unoccupied. A taxi driver named Flynn testified that on the evening in question he repaired his taxi while it was resting on the space in the garage allotted to the Vineburg auto; that he left at six-thirty P. M. but did not see the truck.

In behalf of defendants, Abraham Bebarfald, the president of Vineburg, testified that the only persons who had ever driven the truck up to the day of the accident were defendant Fred Sauer, employed as a helper, and Dolejs, who worked as a plumber. They, alone, were intrusted with the keys of the car which were secreted in a compartment on the dashboard. No one else had been told where the keys were kept. Bebarfald had given instructions to these two men not to use the auto on personal business, though he admitted that once or twice a year the car would be used at night for emergency work and that on at least one occasion he had given permission to Dolejs to use it on a Sunday.

Sauer testified that on the date of the accident, after getting gas at the garage, he had driven the truck to a job on Seventy-first street to pick up some materials and then had left it in front of the Vineburg place of business in East Sixty-ninth street at four-thirty P. M. He accounted for his movements for the remainder of that day and he testified he knew nothing of the accident until awakened about three o'clock in the morning by the police officer. He was corroborated by his wife as to his whereabouts from five in the evening. Sauer admitted that on numerous occasions he had used the car at night for his employer's business.

Dolejs stated that at about four-thirty P. M. he had taken the car from in front of his employer's place of business, made a stop at a barber shop, and at six o'clock in the evening had driven the car into the East 69th Street Garage, and backed it into its assigned place on the upper floor and had left the keys in the compartment on the dashboard. He had not used the truck thereafter that day.

The contention of defendants apparently is that the Vineburg car had been removed from the garage some time after six P. M. by an unknown person; that it was thereafter operated without the knowledge or consent of the owner and that the defendants-respondents were in no way responsible for the accident. They now concede that the Vineburg truck found abandoned was " probably " the one involved in the accident, though at the trial they sharply contested that issue.

Upon all the testimony we think that the court should not have dismissed plaintiff's complaint on the merits as a matter of law.

Proof by plaintiff of Vineburg's ownership of the truck at the time of the occurrence of the accident under section 59 of the Vehicle and Traffic Law created a presumption that the person operating the car was engaged in Vineburg's service or was using the car with its permission. Such presumption, under the law, continues until there is substantial evidence to the contrary. (*Orlando* v. *Pioneer B. T. Supply Co.*, 239 N. Y. 342, 343.) Defendants here sought to destroy the presumption by showing that the only two persons intrusted with the operation of the car were not using it at the time of the accident; that Dolejs had left the car in its customary place on the upper floor of the garage at six P. M.; and that each of the two employees was at home when the accident occurred. Dolejs' testimony, however, is directly contradicted by that of the manager of the garage and of the taxi driver. Moreover, defendant Sauer gave three different versions of what he had done with the Vineburg truck on the afternoon of December second. To the police officer he stated that he had left the car in the garage at four-thirty in the afternoon; upon his examination before trial he deposed that he had picked it up at about three P. M. in front of the Vineburg place of business and had never brought the car back to the garage; at the trial he swore that he had driven the car to the garage for gas in the afternoon and thereafter had left it in front of the Vineburg place of business at four-thirty P. M.

The evidence adduced to show that no permission had been given to use the car on this particular night came from the testimony of three of defendants' witnesses, Bebarfald, Sauer and Dolejs. Yet each admitted that the car has been used on other occasions with permission outside of customary business hours.

In the circumstances, defendants did not, as a matter of law, overcome the presumption that the person operating the Vineburg car at the time of the accident was engaged in Vineburg's business or was using it with its consent, express or implied. Defendants' testimony, supplied, in the main, by interested witnesses, was contradicted by plaintiff's witnesses in important details; some of defendants' testimony was self-contradictory and inconsistent.

Such testimony may reasonably be disregarded by the jury. (*Ferris* v. *Sterling*, 214 N. Y. 249, 253.) Moreover, the court may not determine the truth or falsity of the evidence of interested witnesses. The rule is well settled that their credibility, even though their testimony be uncontradicted, when contradiction is impossible and its truthfulness or accuracy is open to a reasonable doubt, is exclusively for the jury. (*Piwowarski* v. *Cornwell*, 273 N. Y. 226, 229; *Mattar* v. *Cesari*, 266 id. 650; *Lee* v. *City Brewing Corporation*, 279 id. 380, 384; *Aarons* v. *Standard Varnish Works*, 163 Misc. 84, 85; affd., 254 App. Div. 560; *Glasgow* v. *Weldt*, 218 id. 749.)

In *St. Andrassy* v. *Mooney* (262 N. Y. 368), upon which defendants rely, the Court of Appeals reversed a judgment obtained by plaintiffs in a case where a chauffeur discharged after an accident had testified that no consent was given him by defendant, his employer, to use the latter's car at the time of the accident and that he was driving it in defiance of his employer's commands, which testimony, supported by defendant and his wife, was uncontradicted. The court there held that as the testimony of defendant's witnesses was probable, contained no inconsistencies and contradictions and that as the surrounding circumstances forcefully supported the testimony of the discharged chauffeur, the presumption of responsibility by the owner of the motor vehicle for the acts of another disappeared. In this case, however, the defendant Sauer was not discharged, nor was Dolejs. On the contrary, it appears that after the occurrence of the accident Sauer continued to work for the corporate defendant and that he no longer drove the Ford truck.

Material contradictions and inconsistencies were shown in Sauer's testimony and in the testimony of Bebarfald. There is here no testimony from any disinterested source, as there was in the *St. Andrassy* case, that the motor vehicle was being operated in defiance of the directions of the employer-defendant.

Whether the car which collided with the motor vehicle in which plaintiff was a passenger belonged to Vineburg; and, if it did, whether at the time of the occurrence of the accident it was being operated in the course of the business of Vineburg or with its consent; whether the operator at the time of the accident was defendant Sauer, and if so, the circumstances under which he was driving it, upon the evidence in this case, were all issues of fact which a jury alone should decide.

For the foregoing reasons the judgment dismissing the complaint should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.